UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Marquidia Johnson,

    Plaintiff,

v.                                                                              Case No. 13-13829

Stellar Recovery, Inc., *et al.*,                                 Sean F. Cox
                                                                           United States District Court Judge

    Defendants.
_____/

## OPINION & ORDER

Plaintiff Marquidia Johnson ("Plaintiff") filed this action against Defendants Stellar Recovery, Inc. ("Stellar") and T-Mobile USA, Inc. ("T-Mobile") asserting several counts that are all based upon the allegation that Stellar, on behalf of T-Mobile, repeatedly contacted Plaintiff by telephone regarding collection of a T-Mobile debt that had already been discharged in bankruptcy. The matter is currently before the Court on: 1) a "Motion To Compel Arbitration And Stay Claims" filed by T-Mobile; and 2) Stellar's "Motion To Adopt And Join Defendant T-Mobile USA, Inc.'s Motion To Compel Arbitration And Stay Claims."

The Court first considers T-Mobile's Motion to Compel Arbitration. As explained below, this is one of the relatively few cases where the parties do not have a written agreement to arbitrate signed by the parties. Based on the materials presented, this Court concludes that the proper procedure is to retain T-Mobile's motion under advisement and proceed summarily to a jury trial on the limited question of whether or not Plaintiff and T-Mobile entered into an agreement to arbitrate. If the jury answers in the affirmative, this Court will then address

Plaintiff's defense to arbitration (ie., that the bankruptcy order effectively terminated any contract between Plaintiff and T-Mobile) and rule on the motion. If the jury answers in the negative, then the Court shall deny T-Mobile's Motion to Compel Arbitration. The Court shall order that the parties appear for a conference on **December 1, 2014, at 2:00 p.m.,** so that the Court can discuss the scheduling of the trial.

As to Defendant Stellar's Motion to Compel Arbitration and Stay Claims, for the reasons set forth below, the Court shall deny that motion in its entirety.

## BACKGROUND

### A. Procedural Background

Plaintiff filed this action on September 9, 2013. On March 21, 2014, Plaintiff filed a First Amended Complaint (Docket Entry No. 15) that alleges the following claims against Defendants: "Count I – Violation of the Fair Debt Collection Practices Act," asserted against Defendant Stellar; "Count II – Violation of the Michigan Occupational Code," which asserts a claim against Defendant Stellar; "Count III – Violation of the Michigan Collection Practices Act," which asserts a claim against Defendant Stellar; "Count IV – Violation of the Federal Telephone Consumer Protection Act 47 U.S.C. § 227 et seq. against both Defendants"; "Count V – Invasion of Privacy by Intrusion upon Seclusion," which is asserted against both Defendants.

On May 19, 2014, Defendant T-Mobile filed a "Motion To Compel Arbitration And Stay Claims." (Docket Entry No. 22). On August 29, 2014, Defendant Stellar filed a "Motion To Adopt And Join Defendant T-Mobile['s] Motion To Compel Arbitration And Stay Claims." (Docket Entry No. 28). The motions have been briefed by the parties and the Court held a hearing on October 30, 2014.

**B.     Factual Background**

Plaintiff purchased cellular phones and SIM-cards from a company called Interstate Communications, Inc. ("Interstate") in Detroit, Michigan. (Pl.'s Decl. at ¶ 6).

In support of its Motion to Compel Arbitration, T-Mobile submitted a Declaration from Christopher Muzio, employed as custodian of records for T-Mobile. (Ex. A to Def.'s Br.). Muzio's Declaration states that on January 4, 2005, Plaintiff visited Interstate "and activated multiple T-Mobile lines of service." (Muzio Decl. at ¶ 2). Interstate "was an indirect dealer for T-Mobile, in that it sold T-Mobile Products and services but was not a T-Mobile Corporate-owned store." (*Id.*).

Notably, T-Mobile does not have any written contracts signed by Plaintiff.

It is undisputed that Interstate went out of business and the store no longer exists. (Pl.'s Br. at 13; Def.'s Reply Br. at 3).

Muzio's Declaration states that "[i]n order to activate a T-Mobile account at the Interstate Communications store, Plaintiff would had to have been presented with and accepted the T-Mobile terms and conditions that were in effect at the time of activation. It was (and remains) standard operating procedure for T-Mobile subscribers activating services at a T-Mobile authorized retailer to accept and otherwise agree to be bound by T-Mobile's Terms and Conditions of service, including the mandatory arbitration provision." (Muzio Decl. at ¶ 2).

Muzio's Declaration states that on January 4, 2005, T-Mobile's December 2004 Terms and Conditions of service were in effect (the "2004 Terms & Conditions"). (Muzio Decl. at ¶ 3). A copy of the 2004 Terms & Conditions are attached to Muzio's Declaration at Tab 1. The 2004 Terms & Conditions provide:

3

1.  Acceptance of Agreement: You accept this Agreement by: (a) activating or using the Service; (b) signing, orally or electronically accepting the Agreement; or (c) are deemed to have accepted the Agreement, whichever occurs first.  You must activate Service within 30 days after purchase of your Phone (unless returned as provided in Sec. 5).  If you don't activate Service within 30 days, you are deemed to accept the Agreement, and you agree to pay monthly Service charges for the Term according to your rate plan.

(2004 Terms & Conditions at 1).  It also appears undisputed that the 2004 Terms and Conditions contain a broad arbitration clause requiring T-Mobile and its subscriber to arbitrate any claim or dispute that is "in any way related to or concerning" the provision of services by T-Mobile or billing disputes.  That provision states in pertinent part:

2.  **<u>MANDATORY ARBITRATION TO RESOLVES DISPUTES/CLASS ACTION WAIVER/JURY TRIAL WAIVER: ARBITRATION.</u>  PLEASE READ THIS PROVISION CAREFULLY.  IT MEANS THAT, EXCEPT AS NOTED BELOW, YOU AND WE WILL ARBITRATE OUR DISPUTES.  ANY CLAIM OR DISPUTE BETWEEN YOU AND US IN ANY WAY RELATED TO OR CONCERNING THE AGREEMENT, OR THE PROVISION OF SERVICES OR PRODUCTS TO YOU, INCLUDING ANY BILLING DISPUTES ("CLAIM"), SHALL BE SUBMITTED TO FINAL, BINDING ARBITRATION BEFORE THE AMERICAN ARBITRATION ASSOCIATION ("AAA").**  This agreement to arbitrate also requires you to arbitrate claims against other parties relating to Service or Products and our retail dealers, if you also assert Claims against us in the same proceeding.  You and we acknowledge that the Agreement affects interstate commerce and that the Federal Arbitration Act and federal arbitration law apply to arbitrations under the Agreement (despite the choice of law provision in Sec. 23).

(Docket Entry No. 22-2 at Pg ID 133) (underlining, capital letters, and bolding in original).  The 2004 Terms and Conditions define the terms "we" and "us" as T-Mobile and its affiliates.  (*Id*. at Pg ID 136).

T-Mobile does not contend that Plaintiff signed the 2004 Terms and Conditions, either on paper or electronically. Nor does it appear to assert that Plaintiff orally accepted the Terms and Conditions. Rather, according to Muzio's Declaration, "Plaintiff activated T-Mobile service and used the service. By doing so, she accepted the 2004 Terms and Conditions." (Muzio Decl. at 3).

But Plaintiff asserts that she received T-Mobile service *without being provided with any Terms and Conditions*. (Pl.'s Br. at 13). In support of her opposition to the motion, Plaintiff submitted a declaration that states, in pertinent part, that she "repeatedly visited the Interstate Communications, Inc. cell phone store located on 14851 Gratiot Ave, Detroit, Michigan and purchased cell phones and SIM-cards for my personal use whereupon I received a simple cash register receipt and nothing with Terms and Conditions on it as alleged by Defendant T-Mobile." (Pl.'s Decl. at 2). Plaintiff further states that she "was never referred to any T-Mobile website to review any alleged Terms and Conditions." (*Id*.).

On March 1, 2012, Plaintiff filed a Chapter 7 Petition for bankruptcy. (Bankruptcy Case No. 12-45032). Plaintiff included her overdue T-Mobile account in the amount of $1,203.77 in her bankruptcy Petition and its schedules. Plaintiff's bankruptcy was discharged on June 12, 2012.

Nevertheless, Plaintiff alleges that Defendant Stellar, on behalf of Defendant T-Mobile, contacted her repeatedly after her bankruptcy discharge, attempting to collect her $1,203.77 T-Mobile debt even though it had been discharged.

5

## ANALYSIS

**I.      Defendant T-Mobile's Motion To Compel Arbitration**

A written agreement to arbitrate disputes arising out of a transaction in interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *see also Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003). "To enforce this dictate, the Federal Arbitration Act (FAA) provides for a stay of proceedings when an issue is referable to arbitration and for orders compelling arbitration when one party has failed or refused to comply with an arbitration agreement. 9 U.S.C. §§3 and 4." *Id*.

"Section 4 of the FAA sets forth the procedure to be followed by the district court when presented with a petition to compel arbitration." *Great Earth Companies, Inc. v. Simons*, 288 F.3d 878, 888 (6th Cir. 2002). That section provides, in relevant part, that:

> [a] party aggrieved by the . . . refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement . . . The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement . . . If the making of the arbitration agreement . . . be in issue, the court shall proceed summarily to the trial thereof.

9 U.S.C. § 4. "Thus, '[w]hen asked by a party to compel arbitration under a contract, a federal court must determine whether the parties have agreed to arbitrate the dispute at issue." *Great Earth Companies, Inc.*, 288 F.3d at 889. "If the district court is satisfied that the agreement to arbitrate is not 'in issue,' it must compel arbitration. If the validity of the agreement to arbitrate is 'in issue,' the court must proceed to a trial to resolve the question." *Id*.

A.     **Did T-Mobile And Plaintiff Agree To Arbitration?**

"Under normal circumstances, an arbitration provision within a contract admittedly signed by the contractual parties is sufficient to require the district court to send any controversies to arbitration." *Chastain v. Robinson-Humphrey Co., Inc.*, 957 F.2d 851, 854 (11th Cir. 1992). That is because, under such circumstances, "the parties have at least presumptively agreed to arbitrate any disputes, including those disputes about the validity of the contract in general." *Id.*

The Eleventh Circuit has explained that "the calculus changes," however, "when it is undisputed that the party seeking to avoid arbitration has not signed any contract requiring arbitration." *Id.* "Under these circumstances, there is no presumptively valid general contract which would trigger the district court's duty to compel arbitration pursuant to the Act. If a party has not signed an agreement containing arbitration language, such a party may not have agreed to submit grievances to arbitration at all. Therefore, before sending such grievances to arbitration, the district court itself must first decide whether or not the non-signing party can nonetheless be bound by the contractual language." *Id.*

Here, there is no dispute that T-Mobile's 2004 Terms and Conditions contain a broad arbitration provision:

> 1.     Acceptance of Agreement: You accept this Agreement by: (a) activating or using the Service; (b) signing, orally or electronically accepting the Agreement; or (c) are deemed to have accepted the Agreement, whichever occurs first. You must activate Service within 30 days after purchase of your Phone (unless returned as provided in Sec. 5). If you don't activate Service within 30 days, you are deemed to accept the Agreement, and you agree to pay monthly Service charges for the Term according to your rate plan.

(2004 Terms & Conditions at 1). Notably, however, T-Mobile does not have any written contracts incorporating such terms signed by Plaintiff. T-Mobile does not contend that Plaintiff signed the 2004 Terms and Conditions, either on paper or electronically. Nor does it appear to assert that Plaintiff orally accepted the Terms and Conditions. Rather, according to Muzio's Declaration, "Plaintiff activated T-Mobile service and used the service. By doing so, she accepted the 2004 Terms and Conditions." (Muzio Decl. at 3).

But Plaintiff asserts that she received T-Mobile service *without being provided with any Terms and Conditions.* (Pl.'s Br. at 13). This case is therefore one of those rather unusual situations where it is undisputed that Plaintiff, the party opposing arbitration, has not signed any agreement containing an arbitration clause. Accordingly, before sending Plaintiff and T-Mobile to arbitration, this Court must first determine whether or not the validity of the agreement (ie., the 2004 Terms and Conditions) is "in issue."

"The Third Circuit has opined that '[a]n unequivocal denial[1] that the agreement has been made, accompanied by supporting affidavits . . .[,] in most cases should be sufficient to require a jury determination on whether there had in fact been a meeting of the minds' about arbitration." *Mazera v. Varsity Ford Mgmt. Svs, LLC*, 565 F.3d 997, 1001 (6th Cir 2009) (quoting *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 55 (3d Cir. 1980)).

The Eleventh Circuit has opined that "[a] party cannot place the making of the arbitration

---

[1] At the October 30, 2014 hearing, the Court asked if Plaintiff unequivocally denies that she received terms and conditions and agreed to arbitrate. Plaintiff's counsel responded that she does unequivocally deny receiving the terms and conditions and agreeing to arbitrate her claims. This Court stated that Plaintiff could submit an amended Declaration, so stating, if she wished to do so. But given that the Sixth Circuit has not adopted the same standard as the Third Circuit, the Court need not await an amended Declaration. The original Declaration submitted by Plaintiff is sufficient, under the standard applied in this Circuit, to warrant a trial on the issue.

agreement in issue simply by opining that no agreement exists. Rather, that party must substantiate the denial of the contract with enough evidence to make the denial colorable." *Chastain,* 957 F.2d at 855.

In *Great Earth Companies, Inc.*, the Sixth Circuit explained the required showing in this circuit:

> "In order to show that the validity of the agreement is 'in issue,' the party opposing arbitration must show a genuine issue of material fact as to the validity of the agreement to arbitrate. *See Doctor's Assocs., Inc. v. Distajo*, 107 F.3d 126, 129-30 (2d Cir.), *cert. denied*, 522 U.S. 948, 118 S.Ct. 365, 139 L.Ed.2d 284 (1997). The required showing mirrors that required to withstand summary judgment in a civil suit. *Id.*

*Great Earth Companies, Inc.*, 288 F.3d at 889. That is, the Court "view[s] all facts and inferences drawn therefrom in the light most favorable to [Plaintiff], and determine[s] whether the evidence presented is such that a reasonable finder of fact could conclude that no valid agreement to arbitrate exists." *Id*. If a reasonable finder of fact could conclude that no valid agreement to arbitrate exists, the issue is subject to trial by jury. *Id.; Mazera*, 636 F.2d at 1001.

Thus, the Court must consider the evidence submitted by the parties to determine if the validity of the alleged agreement to arbitrate under the 2004 Terms and Conditions is "in issue."

To support its position that Plaintiff is bound by the arbitration provision in its 2004 Terms and Conditions, T-Mobile relies entirely on the Declaration of Muzio, its Custodian of Records. Muzio's Declaration states that on January 4, 2005, Plaintiff visited Interstate "and activated multiple T-Mobile lines of service." (Muzio Decl. at ¶ 2). Interstate "was an indirect dealer for T-Mobile, in that it sold T-Mobile Products and services but was not a T-Mobile Corporate-owned store." (*Id*.). Interstate went out of business and the store no longer exists.

9

(Pl.'s Br. at 13; Def.'s Reply Br. at 3).

Muzio's Declaration states that *"[i]n order to activate a T-Mobile account at the Interstate Communications store, Plaintiff would had to have been presented with and accepted the T-Mobile terms and conditions* that were in effect at the time of activation. *It was (and remains) standard operating procedure for T-Mobile subscribers activating services at a T-Mobile authorized retailer to accept and otherwise agree to be bound by T-Mobile's Terms and Conditions of service,* including the mandatory arbitration provision." (Muzio Decl. at ¶ 2) (emphasis added).

Plaintiff contends that Muzio's declaration is inadmissible to prove that the 2004 Terms and Conditions were ever provided or agreed to by Plaintiff. (Pl.'s Br. at 11).

T-Mobile contends that it has "presented evidence that Plaintiff could not have activated T-Mobile service without accepting the Terms and Conditions" and asserts that the "Sixth Circuit has found this type of evidence sufficient to establish contractual acceptance." (Def.'s Reply Br. at 1). T-Mobile contends it has submitted admissible routine practice evidence under Fed. R. Evid. 406 and directs the Court to *Martin v. Thrifty Rent A Car*, 145 F.3d 1332 (6th Cir. 1998).

Rule 406 of the Federal Rules of Evidence provides that evidence of "an organization's routine practice may be admitted to prove that on a particular occasion the person or organization acted in accordance with the habit or routine practice. The court may admit this evidence regardless of whether it is corroborated or whether there was an eyewitness." Fed. R. Evid. 406.

In *Martin,* the Sixth Circuit explains as follows as the admission of routine practice

evidence under Fed. R. Evid. 406:

> Rule 406 of the Federal Rules of Evidence provides, in pertinent part, that "[e]vidence ... of the routine practice of an organization, whether corroborated or not and regardless of the presence of eyewitnesses, is relevant to prove that the conduct of the ... organization on a particular occasion was in conformity with the ... routine practice." F.R.EVID. 406. This rule reflects the concern "that in a large organization it is unlikely that any individual will remember one of a large number of repeated transactions, and even if he does, the cost of finding that person and producing him in court is disproportionate to the value of his testimony." 23 CHARLES ALAN WRIGHT & KENNETH W. GRAHAM, FEDERAL PRACTICE AND PROCEDURE § 5274, at 45 (1980). Conduct that is admissible under this rule generally satisfies the following three elements: (1) "it should be of such a nature that it is unlikely that the individual instance can be recalled or the person who performed it can be located," id at 46; (2) *it "must be specific conduct that is engaged in frequently by the group,"* id. at 47, and (3) *"the number of instances of such behavior must be large enough that doubt about a single instance does not destroy the inference that the practice existed," id. at 48. In practice, to establish that a particular conduct qualifies as a routine practice, the proponent must show that the organization had a uniform response over an adequate number of instances. See, e.g., Mobile Exploration & Producing U.S., Inc. v. Cajun Constr. Servs., Inc.*, 45 F.3d 96, 100 (5th Cir.1995); United States v. West, 22 F.3d 586, 592 (5th Cir.1994); *Simplex. Inc. v. Diversified Energy Sys., Inc.*, 847 F.2d 1290, 1293 (7th Cir.1988). This foundation ensures the reliability of the evidence by demonstrating that the conduct in question was " 'semi-automatic' in nature." *Simplex. Inc*., 847 F.2d at 1293 (citing FED.R.EVID. 406 (Notes of Advisory Committee)).

*Martin, supra*, at *4 (emphasis added).

In *Martin*, the Sixth Circuit noted that "[m]ost relevant to the case at hand, routine practice evidence also has been accepted as proof of a party's receipt and acceptance of standard contractual terms" and cited several examples where routine practice evidence was allowed:

> *See In re Swine Flu Immunization Products Liability Litigation*, 533 F.Supp. 567, 574 (D.Colo.1980) (holding that defendant's "routine practice of obtaining signed consent forms prior to administering the vaccine" sufficed to establish that it "had acted in conformity with the habit and custom in advising [plaintiff] of the potential adverse effects of the swine flu vaccine"); *Envirex. Inc. v. Ecological*

> *Recovery Associates. Inc.*, 454 F.Supp. 1329 (M.D.Pa.1978) aff'd 601 F.2d 574 (3d Cir.1979) (allowing officer of plaintiff corporation to testify to its routine business practice of sending "a complete proposal, including page 18[,] to all general contractors with which it contracted," as proof that defendant received entire contract).

*Martin, supra*, at *5. Thus, those cases involved a corporate entity providing evidence of specific conduct: 1) a "routine practice of obtaining signed consent forms prior to administering the vaccine" in one case; and 2) a routine business practice of sending "a complete proposal, including page 18[,] to all general contractors with which it contracted," in another case.

Here, Muzio's Declaration states, in a conclusory fashion, that "[i]n order to activate a T-Mobile account at the Interstate Communications store, Plaintiff would had to have been presented with and accepted the T-Mobile terms and conditions that were in effect at the time of activation. *It was (and remains) standard operating procedure for T-Mobile subscribers activating services at a T-Mobile authorized retailer to accept and otherwise agree to be bound by T-Mobile's Terms and Conditions of service,* including the mandatory arbitration provision." (Muzio Decl. at ¶ 2) (emphasis added).

Notably, there is no specific conduct, as to any routine business practice of either T-Mobile or Interstate, set forth in Muzio's Declaration. That is, Muzio's Declaration includes no details whatsoever as to any routine practice under which Plaintiff would have been presented with the Terms and Conditions at Interstate and it provides no explanation or detail as to the "standard operating procedure" under which a customer at Interstate, or any other authorized T-Mobile dealer, would have been required to accept or agree to the Terms and Conditions before T-Mobile service was activated.

Thus, this case can be distinguished from *Martin*, wherein the Sixth Circuit found that the

defendant had offered evidence to "prove that its provision of rental documents to its customers involved *systematic, particularized*, and repetitive conduct." *Martin, supra*, at * 5 (emphasis added).

The Court finds T-Mobile's reliance on several other cases unpersuasive because they can be easily distinguished from this case in that they each involved evidence of the corporate entity having a specific routine practice under which the party resisting arbitration was given the contract, and the party resisting arbitration merely made a general denial of having received the contract.

In *Schwartz v. Comcast Corp.*, 256 F. App'x. 515 (3d Cir. 2007), the party resisting arbitration became a customer of Comcast cable in 2003. In seeking to arbitrate, Comcast presented evidence to establish that it had a routine practice of providing a "welcome packet," which included a copy of its "Subscriber Agreement," to all new customers.

In *O'Quinn v. Comcast Corp*, 2010 WL 4932665 (N.D. Ill. 2010), the party seeking arbitration presented evidence that "Comcast's routine practice is to provide customers with the Customer Agreement at the time service are installed and to require the customer to click a box accepting the Customer Agreement in order to access Comcast's Internet service for the first time" and that the Plaintiff's general denial was not enough to overcome the presumption that Comcast's service provider followed the custom.

In *Cuadras v. MetroPCS Wireless, Inc*., 2011 WL 11077125 (C.D. Cal. 2011), the plaintiff activated four different cellular phones at "Digicom Wireless, an independent MetroPSC dealer in Compton, California." MetroPCS, the party seeking arbitration, presented a Declaration from its representative stating that "[i]t is MetroPCS's standard procedure to give

customers a copy of a Start of Service Request Form, including a printed copy of the then-current MetroPCS Terms and Conditions of Service," and that it was their practice to provide customers with a copy of the Terms and Conditions each time they activated a line of service, and that their welcome guide also referred customers to the Terms and Conditions on its website, and the plaintiff did not deny that she received the Terms and Conditions.

Accordingly, based on its current state, the Court finds that the Muzio's Declaration is inadmissible under Fed. R. Evid. 406.

Moreover, even if T-Mobile could offer evidence of some routine practice under which Plaintiff could be presumed to have been given the Terms and Conditions when she visited Interstate, Plaintiff has submitted some evidence to rebut the presumption that Interstate followed that routine practice with her.

Again, under Sixth Circuit authority, the required showing in this circuit for Plaintiff is as follows:

> "In order to show that the validity of the agreement is 'in issue,' the party opposing arbitration must show a genuine issue of material fact as to the validity of the agreement to arbitrate. *See Doctor's Assocs., Inc. v. Distajo*, 107 F.3d 126, 129-30 (2d Cir.), *cert. denied*, 522 U.S. 948, 118 S.Ct. 365, 139 L.Ed.2d 284 (1997). The required showing mirrors that required to withstand summary judgment in a civil suit. *Id*.

*Great Earth Companies, Inc*., 288 F.3d at 889. That is, the Court "view[s] all facts and inferences drawn therefrom in the light most favorable to [Plaintiff], and determine[s] whether the evidence presented is such that a reasonable finder of fact could conclude that no valid agreement to arbitrate exists." *Id*.

In support of her opposition to the motion, Plaintiff submitted a declaration that states, in

pertinent part, that she "repeatedly visited the Interstate Communications, Inc. cell phone store located on 14851 Gratiot Ave, Detroit, Michigan and purchased cell phones and SIM-cards for my personal use whereupon I received a simple cash register receipt and nothing with Terms and Conditions on it as alleged by Defendant T-Mobile." (Pl.'s Decl. at 2). Plaintiff further states that she "was never referred to any T-Mobile website to review any alleged Terms and Conditions." (*Id.*).

The Court finds that Plaintiff has presented sufficient evidence such that a reasonable fact finder could conclude that no valid agreement to arbitrate exists. The Court concludes that the proper procedure is to retain T-Mobile's Motion under advisement, and proceed summarily to a jury trial on the limited question of whether or not Plaintiff and T-Mobile entered into an agreement to arbitrate. *See, e.g., Smarttext Corp. v. Interland, Inc*., 296 F.Supp.2d 1257 (D. Kan. 2003).

### B.      If An Agreement To Arbitrate Exists, Does The Bankruptcy Discharge Effectively Terminate Any Contract Between Plaintiff And T-Mobile?

In addition to asserting that she never agreed to arbitrate her claims with T-Mobile, Plaintiff also asserts, as a defense to arbitration, that the June 12, 2012 bankruptcy discharge order effectively terminated any alleged contract between her and T-Mobile. (*See* Pl.'s Br. at 14-21). Defendant disagrees and directs the Court to this Court's decision in *Mann v. Equifax Info. Svs., LLC*, 2013 WL 3814257 (E.D. Mich. 2013).

It light of this Court's determination above, it is premature to address Plaintiff's defense to arbitration. If the jury determines that a valid agreement to arbitrate exists, this Court will then address this defense.

**II.     Defendant Stellar's Motion To Compel Arbitration Or Stay This Action**

Defendant Stellar's three-page motion asserts that "Plaintiff's claims against T-Mobile and Stellar are so intertwined that the arbitration provision and the stay must be applied to the claims against Stellar, it would be a waste of judicial resources to address them separately, and would create a risk of different results being reached by this Court and an arbitrator." (Def.'s Motion at 2). The motion cites no authority for this argument or the relief requested. The motion then states, with no further discussion or explanation:

> 6.     Stellar additionally adopts and joins T-Mobile's Motion to Compel Arbitration and the Memorandum in Support of said Motion, and incorporates all arguments set forth in the Motion and Memorandum as if fully set forth herein. See Dkt. No. 22.

Def.'s Motion at 2).

Defendant Stellar's motion also states: "Alternatively, if this Court finds that the arbitration provision should not be applied to Stellar, but grants T-Mobile's Motion and compels arbitration between T-Mobile and Plaintiff, this Court should stay the instant litigation against Stellar until arbitration is completed between T-Mobile and Plaintiff, to avoid conflicting results being reached." (*Id*.). The motion does not explain how staying this action while an arbitration between T-Mobile and Plaintiff proceeded would avoid conflicting results. If one party is required to arbitrate and one is not, there would be two proceedings, and could well be two different outcomes as to claims, regardless of whether there is a stay or not.

Plaintiff filed a response brief opposing the motion, and anticipating some of the arguments that Stellar could have, but did not, make in its motion. (Docket Entry No. 35).

The Court shall deny Defendant Stellar's Motion.

16

First, Stellar has identified no authority whatsoever that would authorize this Court to compel a plaintiff to arbitrate claims against a party it did not agree to arbitrate claims with simply because an arbitration agreement may exist with another party in the same case and the claims are "intertwined."

Second, Stellar's "adoption" of T-Mobile's motion does nothing. T-Mobile asserts that T-Mobile and Plaintiff agreed to arbitrate their disputes, pursuant to the 2004 Terms and Conditions, that T-Mobile claims Plaintiff accepted. Even if the Court agreed with T-Mobile's position, that would not help Stellar – who was not a party to the transaction at issue. Unlike T-Mobile, Stellar has offered no argument whatsoever that it and Plaintiff have an agreement to arbitrate.

Nevertheless, although not addressed by Stellar, the case law reflects that "nonsignatories may be bound to an arbitration agreement under ordinary contract and agency principles." *Javitch v. First Union Secs.*, 315 F.3d 619, 629 (6th Cir. 2003); *Arthur Anderson LLP v. Carlisle*, 556 U.S. 624, 631 (2009). "Five theories for binding nonsignatories to arbitration agreements have been recognized; (1) incorporation by reference, (2) assumption, (3) agency, (4) veil-piercing/alter ego, and (5) estoppel." *Id*

Here, however, Defendant Stellar has made no attempt to establish that any of these exceptions operate to require Plaintiff to arbitrate her claims against Stellar based on the arbitration provision in the T-Mobile 2004 Terms and Conditions.

Accordingly, for all of these reasons, the Court shall deny Defendant Stellar's motion in its entirety.

**CONCLUSION & ORDER**

As to Defendant T-Mobile's Motion to Compel Arbitration, the Court **RULES** that the proper procedure is to **RETAIN T-Mobile's motion UNDER ADVISEMENT** and proceed summarily to a jury trial on the limited question of whether or not Plaintiff and T-Mobile entered into an agreement to arbitrate.  If the jury answers in the affirmative, this Court will then address Plaintiff's defense to arbitration (ie., that the bankruptcy order effectively terminated any contract between Plaintiff and T-Mobile) and rule on the motion.  If the jury answers in the negative, then the Court shall deny T-Mobile's Motion to Compel Arbitration.  The Court **ORDERS** that the parties appear for a conference on **December 1, 2014 at 2:00 p.m.,** so that the Court can discuss the scheduling of the trial.

**IT IS FURTHER ORDERED** that, for the reasons set forth above, Defendant Stellar's Motion to Compel Arbitration and Stay Claims is **DENIED.**

**IT IS SO ORDERED.**

                                                                       S/Sean F. Cox
                                                                       Sean F. Cox
                                                                       United States District Judge

Dated:  November 5, 2014

I hereby certify that a copy of the foregoing document was served upon counsel of record on November 5, 2014, by electronic and/or ordinary mail.

                                                                      S/Jennifer McCoy
                                                                       Case Manager